# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

ASSOCIATION OF INDEPENDENT
PROPERTY BROKERS AND
AGENTS, INC.,

    Plaintiff,

v.                                                    Case No: 5:15-cv-38-Oc-30PRL

ANTHONY FOXX, Secretary, United
States Department of Transportation,
et al.,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss (Doc. 8) and Plaintiff's response in opposition thereto (Doc. 11). The Court, having reviewed the motion and response, and being otherwise fully advised in the premises, concludes that Defendants' motion to dismiss should be granted.

## BACKGROUND

Plaintiff Association of Independent Property Brokers, Inc., is an independent, non-profit trade group comprised of small- and mid-sized independent property brokers. A property broker is an individual who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). In other words,

a broker acts as the link between a shipper and a carrier to facilitate the movement of goods. To operate as a property broker arranging for shipment of property between state lines, such broker must register and obtain a license from the United States Department of Transportation Federal Motor Carrier Safety Administration ("FMCSA").[1]  *See* 49 U.S.C. § 13904.  To qualify for registration, a property broker must either secure a surety bond or establish a trust fund and file proof of the security bond or trust fund with the FMCSA. *See* 49 U.S.C. § 13906(a)(2).  The FMCSA will not issue a license for a property broker who has not complied with this requirement.  *See* 49 C.F.R. § 387.307(a).

Previously, a property broker was required to post a minimum of $10,000 in security.  However, on July 6, 2012, Congress signed into law the Moving Ahead for Progress Act in the 21st Century, which, inter alia, increased the security requirement from $10,000 to $75,000.  *See* Moving Ahead for Progress in the 21st Century Act ("MAP-21"), Pub. L. No. 112-141, sec. 32918, § 13906, 126 Stat. 405, 822-27 (2012).  Any property broker who failed to comply with this requirement by October 1, 2013, or failed to maintain this minimum level of financial security, was subject to immediate suspension of his or her license.  *See* § 13906, 126 Stat. at 826 note (setting the effective date one-year after enactment); 49 C.F.R. § 387.307(a).

---

[1]The FMCSA is authorized to regulate property brokers pursuant to a delegation of authority from the United States Secretary of Transportation.  *See* Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (codified at 49 U.S.C. § 13501) (abolishing the Interstate Commerce Commission and vesting the Secretary of Transportation with jurisdiction over the procurement of interstate motor carrier transportation); Motor Carrier Safety Improvement Act of 1999, Pub. L. No. 106-159, 113 Stat. 1748 (establishing the FMCSA).  Defendant Anthony Foxx is the current Secretary of Transportation.

Prior to the enactment of MAP-21, Plaintiff's members had licenses from the FMCSA to operate as property brokers. The members paid the application fee, completed all application requirements, and obtained the $10,000 bond or trust fund necessary to obtain a license from the FMCSA. Although most of Plaintiff's members have maintained their licenses since the enactment of MAP-21, several members were unable to meet the security requirement and are no longer licensed as property brokers.

By its complaint, Plaintiff alleges that the provision of MAP-21, 49 U.S.C. § 13906(b)(3), requiring security in the amount of $75,000 is arbitrary and not reasonably related to a proper purpose. Plaintiff therefore seeks declaratory judgment that this provision is unconstitutional because it violates the rights of Plaintiff's members to substantive due process under the Fifth Amendment. Defendants contend that Plaintiff is not entitled to declaratory relief and its complaint should be dismissed because Plaintiff has not established that no conceivable rational basis exists for increasing the security requirement.

## DISCUSSION

### I. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are

not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## II.  Analysis

### A.  Statutory and Regulatory Framework

Beginning in 1935, Congress saw fit to regulate property brokers in the transportation industry in the interest of protecting "carriers and the shipping public from dishonest and financially unsound middlemen." Jeffrey S. Kinsler, *Motor Freight Brokers: A Take of Federal Regulatory Pandemonium*, 14 Nw. J. Int'l L. & Bus. 289, 302 (1994) (citing *Milan Exp. Co. v. W. Sur. Co.*, 792 F. Supp. 571, 574 (M.D. Tenn. 1992)); *see also* Motor Carrier Act of 1935, ch. 498, sec. 201-22, 49 Stat. 543, 543-67 (codified as amended in scattered sections of 49 U.S.C.).  In 1936, the Interstate Commerce Commission ("ICC"), the now-defunct entity charged with implementing the Motor Carrier Act from 1935 until its demise, established a $5,000 surety-bond requirement for property brokers. *See* Rules and Regulations Governing the Filing and Approval of Surety Bonds, 1 Fed. Reg. 1156 (Aug, 20, 1936).  In 1979, the ICC increased the security requirement from $5,000 to $10,000. *See* Passenger Broker Entry Control, 44 Fed. Reg. 70167 (Dec. 6, 1979) (to be codified at 49 C.F.R. pts. 1043, 1045B, 1046).  For years, the security requirement went unchanged.  Then, in 2012, Congress enacted MAP-21, which increased the security requirement from $10,000 to $75,000. *See* § 13906, 126 Stat. at 822-27.

### B.  Plaintiff's Argument

Plaintiff takes issue with MAP-21's increase of the security requirement from $10,000 to $75,000, arguing that the increased security amount is arbitrary and

4

unreasonable. Specifically, Plaintiff alleges that no data or findings of fact exist showing that the $75,000 amount is more effective at combating fraud or that a lesser amount would not be equally effective. Plaintiff highlights that the FMCSA previously considered increasing the security requirement to $25,000 to adjust for inflation, but it concluded that adequate justification was lacking to increase the amount any greater than $25,000. *See* Brokers of Household Goods Transportation by Motor Vehicle, 75 Fed. Reg. 72987, 72992 (Nov. 29, 2010). According to Plaintiff, three entities, including the Owner Operator Independent Driver's Association, the Transportation Intermediaries Association, and the American Trucking Associations, lobbied to increase the security requirement to curtail fraud in the property-broker industry. Plaintiff contends, however, that these entities' true intention in seeking a higher security requirement is to drive new and smaller brokers out of the broker industry. Thus, Plaintiff asserts that the $75,000 security requirement was set based on anticompetitive collusion rather than appropriate findings of fact.

Plaintiff further argues that the $75,000 security requirement is not rationally related to a legitimate government purpose because it runs counter to the statutory national transportation policy, which aims to "encourage fair competition, and reasonable rates for transportation by motor carriers of property," "allow a variety of quality and price options to meet changing market demands and the diverse requirements of the shipping and travelling public," and "promote greater participation by minorities in the motor carrier system." (Doc. 1 at 5 (citing 49 U.S.C. § 13101(a)(2)). Instead, Plaintiff proffers that the increased security amount will limit the variety of options available to motor carriers,

5

drastically increase rates for shipping property and cause a corresponding increase in consumer prices, and adversely affect minority property brokers.

### C. Substantive Due Process

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. When a challenged law does not infringe upon a fundamental right, as in this case, a substantive due process challenge is reviewed under the rational basis test. *See Locke v. Shore*, 634 F.3d 1185, 1195-96 (11th Cir. 2011). Under rational basis review, a law will be upheld as constitutional if it is rationally related to a legitimate government purpose. *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013). In other words, a statute is constitutional if "there is any reasonably conceivable state of facts that could provide a rational basis for [it]." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The party challenging the statute bears the burden of establishing that the statute lacks a rational basis. *See Bah v. City of Atlanta*, 103 F.3d 964, 967 (11th Cir. 1997) (citing *Beach Commc'ns, Inc.,* 508 U.S. at 314-15).

Plaintiff has failed to establish that the $75,000 security requirement lacks a rational basis. Economic legislation "come[s] to the [c]ourt with a presumption of constitutionality." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). "To prove that a statute violates its due process rights, the aggrieved party must demonstrate that the legislature has acted arbitrarily and irrationally." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1057 (11th Cir. 2008). But "if the government can show that the statute has a

'legitimate legislative purpose furthered by rational means,' due process is satisfied." *Id.* (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992)).

As Plaintiff acknowledges in its complaint, Congress increased the security requirement in order to combat fraud, which has long been recognized as a problem in the property-broker industry. *See* Kinsler, *supra*, at 291 (discussing abuse perpetrated by property brokers and its negative impact on domestic and international trade). Plaintiff takes issue not with the increase itself, but with the amount of the increase, arguing that the amount is unnecessary to accomplish Congress's objective. In support of its argument, Plaintiff highlights that the $75,000 amount is not supported by "facts, information or other data to indicate that there was a justification for significantly raising the broker bond." But a law "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns,* 508 U.S. at 315. The "precise coordinates" of legislative decision making is "virtually unreviewable." *Id.* at 316.

Plaintiff also emphasizes that the FMCSA previously concluded that no justification existed to increase the security requirement above $25,000, but the opinion of the FMCSA is not relevant in determining whether a rational basis existed for *Congress's* decision to increase the security requirement to $75,000. Perhaps new evidence came to light that was not presented to the FMCSA or perhaps Congress was more persuaded by the facts presented where the FMCSA was not. Regardless of the reason for Congress's disagreement with the findings of the FMCSA, it was Congress's prerogative to determine

7

the amount of the increase to accomplish its intended objective, and Plaintiff has not demonstrated that its decision was arbitrary or irrational.

Plaintiff also argues that Congress's true motivation in setting the security requirement at $75,000 was anticompetitive collusion. But Plaintiff's contention has no bearing on whether Congress's decision passes muster under a rational-basis inquiry. Indeed, the true motivation of Congress is not probative of whether a rational basis exists because the operative inquiry is whether *any conceivable basis exists* for Congress to believe that the means they have selected will tend to accomplish the desired outcome. *See Beach Commc'ns, Inc.*, 508 U.S. at 315 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."); *see also United States v. Osburn*, 955 F.2d 1500, 1505 (11th Cir. 1992) ("When a legislative judgment is questioned, the court's role must be restricted to the issue of whether *any state of facts either known or which could reasonably be assumed* affords support for it." (internal quotation marks omitted)).

While Plaintiff may have impugned the wisdom of the increase, Plaintiff has not demonstrated that Congress could not have possibly believed that increasing the security requirement to $75,000 would accomplish its goal of alleviating fraud in the property-broker industry. Increasing the security requirement was a rational means by which Congress could accomplish its objective, and it is not for this Court to "judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns, Inc.*, 508 U.S. at 313.

Accordingly, the Court concludes that § 13906(b)(3), increasing the security requirement for property brokers to $75,000, survives rational-basis scrutiny.

## **CONCLUSION**

Because Plaintiff has failed to overcome the strong presumption of validity accorded to economic regulations, Plaintiff's complaint should be dismissed.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss (Doc. 8) is GRANTED.

2. This action is DISMISSED with prejudice.

3. The Clerk is directed to terminate any pending motions and close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of July, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record